May it please the Court, Cal Potter on behalf of Dr. Marv Carlins, knowing that the Court is familiar with the facts of this case, I would like to focus on why the District Court erred in dismissing this case. I think first of all it's important to take fact that the case does not preclude the cases of Flieger and the other Nevada cases dealing with this process where the District Attorney does take percentages of collection amounts. That's not the purpose of this case. Dr. Carlins never disputed that a debt was owed to the Tropicana. This case focuses upon the malicious manner in which the Tropicana attempted to collect the debt. I was trying to figure out what a marker was. I've never actually seen one. And it sounded like the words of a marker would be what in places other than Nevada would be called a countercheck, just the words of a check not printed on the banks or the depository stationary. Is that true? I believe it is, Your Honor. Initially the arguments made prior to the Wynn case in the criminal courts and the Flieger case out of the civil courts was that those were IOUs. We're not making that argument to this Court. We think that that is settled law in terms of a marker being a check. Did you look like that? Yes, sir. Did they just say a date, pay to the order of this and that casino, so many dollars, signed by so-and-so? Yes, sir. And there's also provisions under the law that allow to have the markers actually have, if there are blanks in there, to have them filled in by the casino as part of the agreement. And that's what happened in this particular case. Now, let me ask you something else. Was the casino trying to collect on the marker when it was, when there was a blank in there? Yes. They attempted to first collect on the marker and send out what we call the 10-day letter. Did the stay, is there any reason why a stay wouldn't affect a marker? The stay does affect the marker, but their initial letter was sent out before the bankruptcy was filed. Well, with respect to anything that happened after the bankruptcy was filed, why wouldn't there be exclusive jurisdiction in the bankruptcy court, which has the statutory authority to determine whether there's been a willful violation of the stay, and if so, to assess damages? It would have jurisdiction, Your Honor, and that was one of the arguments that initially was made to the court. And what Judge Mahan ruled was that he believed that he did not have jurisdiction over the violation of the automatic stay, and therefore believed that we would have what would be essentially called a civil extortion cause of action under the common law. Well, what I'm wondering is the following, and it may be similar to what Judge Kleinfeld's question is concerned. That which happened before the initiation of the bankruptcy was simply the sending of the demand letter, as far as I can tell. There was nothing else that happened until after the bankruptcy was filed. And it would seem to me that the only thing that would be available to you outside of the bankruptcy court would be an assertion that there was something wrong with that initial letter. And what was wrong with that initial letter saying, you haven't paid and we want our money? It doesn't say. It says more than that. Well, it says more than that, but what's wrong with that initial letter? Why is that actionable under Nevada law? Because it's a situation where it's essentially what we're talking about in the Templeton case out of California dealing with the civil extortion. It's what goes on prior to the time that the process is actually entered into. California recognizes that court, don't they? I believe under the Templeton law that is good law, and California does recognize that. And the state I come from, Arizona, recognizes that tort, but Nevada doesn't. Well, it's not that Nevada doesn't recognize it. Nevada also talks about in this Posadas v. City of Reno case where a process was used to file charges against an officer, not because he had committed a crime but because they wanted to have him resign from the police department. That's the most recent case in Nevada dealing with the issue of abusive process. But as I understand the claim here, which would be a perfectly cognizable claim in a state that recognized it, is that Tropicana used the threat of criminal prosecution to gain advantage in a civil debt obligation situation, right? Correct. In fact, in my state, Arizona, what I just described is a crime called extortion. But Nevada doesn't recognize it as a crime, and apparently has not said flat out that civil extortion in this circumstance is a recognized tort, right? Well, they haven't. But most of our courts in Nevada aren't codified in that sense. The argument that was made at the time of the district court is similar to that, that there has to be some type of criminal statute for that. But we're not suing under the criminal statute. The citations and what Your Honor is talking about in terms of either California or Arizona talks about those types of crimes codified as a criminal act. But our argument is that the same type of thing. It's what took place at the time in which they sent the letter out, the threat of the criminal prosecution. And also in terms of the fact that they talked about a 10-day notice being required by Nevada law, and although Nevada law doesn't require that, that's the representations that they made to Dr. Carlin. How is this different from a bad check? I'm sorry? How is this different from a bad check? How is this different from a bad check? Yes. How is this case different from someone who writes a non-sufficient funds check and the person who it's made payable to tries to collect on it? In the instance here, the difference, and of course the other arguments that we're making in terms of the 1983 claim, is that you have a situation where the casinos by statute give 10 percent, up to 10 percent, of what is recovered to the district attorney. So you have a joint relationship and you have, in this particular instance, you have a situation. I don't believe it's common in other jurisdictions where the district attorney shares in the collection of what would normally be restitution. But what you have here is a situation where, unlike the Wynn case, which was the criminal case, there was not any money. It was actually a closed account. And the other cases that come before the marker unit usually don't have the situation where somebody is trying to file bankruptcy. That's what makes Dr. Carlin's case unique, and why it wouldn't open any floodgates in terms of these types of cases challenging the collection practices of the markers. Tell me if I've got this right. For after the stay is in effect, the issue would be willful violation of the stay, and that would be a bankruptcy court issue. That's correct. For before the stay is in effect, the issue would be threatening criminal proceedings in order to obtain payment of a debt, and that would be not a bankruptcy issue, but the civil court of abuse of process under these Nevada cases of LaMantia and this other one here. Pitt, I think it's called. No, not Pitt.  Posadas v. City Arena was a case where they had a police officer who they believed had testified or had coerced some type of deal for a third party in a traffic matter. They then charged him with a criminal act in the city court and a misdemeanor court, and the purpose in charging him was to force him to resign as a police officer. So the ulterior motive was to file the criminal process to force him to do a resignation. The argument is similar here in the sense that what they were trying to do was get Dr. Carlins to pay with a threat as well as giving him an artificial amount of time, which they did not abide by, which was not allowed. So it's not asking him to pay the marker that's the problem. It's threatening him with criminal proceedings. That's correct. Threatening him with criminal proceedings. I understand that in Nevada that's so even if the person really does owe the debt. Is that correct? Your Honor, that is correct. And what they try and do with the 10-day notice because in a bad check situation if an individual pays, then the argument is they don't have the criminal intent. And to the extent I have any time, I'd like to reserve. Thank you, counsel. Good morning. May it please the Court. Todd Bice on behalf of Hotel Ramada, otherwise known as the Tropicana Resort and Casino in Las Vegas. To be succinct about this. Could you speak up? I apologize. To be succinct about it and to answer the question that was asked, this is a countercheck. That's what it is, fair and simple. It's made out to his bank. I didn't understand what you said. It is a countercheck, pure and simple. That's what all they are. Bankers. And the Nevada Supreme Court has addressed that in the Nguyen case saying that markers, that's a term used in the casino industry, but they are, in fact, checks. And that's how they operate, as checks. All this is is a bad check case. Let me ask you about that. This kind of caught my eye because, although the rules of ethics seem to have changed, when I was in practice, the rule was you couldn't threaten somebody with to tell the DA what he was doing that was a crime in order to obtain an advantage in a civil proceeding or you'd get disbarred. And I think under Alaska law it was blackmail. We had blackmail and extortion combined. Sure. And I looked in Nevada law and there are two cases that make me think the tort is recognized in Nevada. One is this Lamantia v. Radice and the other is Posadas v. City of Reno. Lamantia says that the two elements for abuse of process under Nevada law, these are both Nevada Supreme Court cases, is an ulterior purpose in the lawsuit other than resolving the dispute in that lawsuit and use of the legal process to accomplish that purpose. And Posadas says that, indeed, those are the elements, just those two elements, and it says that this applies where a policeman was charged with a crime to be used as a bargaining tool in obtaining a resignation from him. Correct. Why? This is just 12b-6. We're not at summary judgment yet. Yes. So we don't we really have to take the facts most favorably as stated in the complaint and with all inferences in favor of the plaintiff. Why doesn't it fit within these two Nevada cases? Let me start by answering that question with the point that that is a claim for abuse of process, not a claim for civil extortion. Well, true, but 12b-6 we have to ask could he amend the complaint. I agree with that, but I want to make the point that there was a claim for abuse of process asserted in the first complaint filed in this action that was dismissed and was not appealed. But let me get directly to answering your question. The reason that this action that they describe, accepting all the facts as true to not give rise to a claim for abuse of process, is because simply sending a letter to someone telling them that you are going to institute criminal proceedings against them for committing a crime and seeking restitution of that is not an improper purpose. Why not? It looks like under this policeman's case it might be. No, I disagree completely. Think about what the facts were in Posados. He was being charged with a crime unrelated to his actions in order to get him to resign as a policeman. The objective was to get him to resign. Here you have a bad check statute in Nevada, which you have. I don't want to represent that you have them in every jurisdiction in the United States, but I believe that almost all jurisdictions do have a bad check statute, and that when you pass an insufficient funds check, it is a crime, and it is common practice. But it looks as though Posados doesn't talk about it being unrelated. Or did I miss something there? No, I'm not saying that it has to be unrelated. You're saying the difference is that in Posados it was an unrelated crime, and here the crime and the bad check are the same thing. But I can't see where Posados draws that distinction. I shouldn't, I guess, phrase it that way. The point is, what I'm making is, when you commit the crime of passing an insufficient funds check, which is what he did here, all right, every merchant in the United States reports that to their local district attorney. It's a crime, and the local district attorney enforces it. I remember some of those cases in Alaska, and the way they stay out of trouble is they report it first. They don't make a collection attempt and say, we're going to report this to the police unless you pay us. Well, all I can answer in respect to that is that Nevada law, this is a common practice in Nevada law, it's the exact same thing that went on in the Nguyen case, and that is you give them notice to pay it, and if they don't pay it, it's then referred to law enforcement to collect. And we cited to you a couple of cases, and I can see they are from other jurisdictions. I thought in Nguyen they weren't talking about the tort, they were just explaining what a marker was. Correct. Correct. But the point here is, is that it's not a crime to alert someone that they've committed a crime and ask them to pay what they owe, and if they don't it's going to be referred to law enforcement. That happens with every merchant in the State of Nevada, every one of them. I have a question, and assume for the purpose of my question that there is a claim for events that occurred prior to the filing of bankruptcy. To the extent there is such a claim, wouldn't it be an asset of the bankruptcy estate? Of course it would be. It would have to be. It would have to be a claim that was listed, and it would have to be something that was handled by the trustee in the bankruptcy proceedings. And it would have to be asserted as a claim and litigated before the bankruptcy court. Anything that was pre-petition and anything that was post-petition would be governed accordingly. This was the what they're complaining about here is pre-petition. We didn't even get to that in front of the district court. We would have had we gotten that far in the case, but we didn't even get to that point, obviously, because of where we were at relative to 12b-6. But responding back to the question about improper, I think that the terminology used by the Nevada Supreme Court is ulterior purpose. Ulterior rather than improper. Ulterior purpose. It can be a perfectly straight-up crime and a perfectly legitimate civil claim. And if it's ulterior, that's all they require. Yes, but as I think we cited two cases to you, one from the Maryland Court of Appeals and one from let me double-check because I don't want to misspeak on this issue. One was from the Maryland Court of Appeals and the other one was from the Louisiana Court of Appeals. Both of those courts pointed out dealing with those state bad check statutes, which is what we're dealing with here. It is not an ulterior purpose to have to report someone to law enforcement to have them charged with a crime that they committed. That's simply not an ulterior purpose under the law. That's neither Nevada nor Supreme Court. I agree with you. I agree with you. It is neither Nevada nor. But under Nevada law, you give notice to the party to pay the amount that the check has been dishonored and that if they don't honor the check, it's going to be turned over to the district attorney for prosecution. He didn't honor the check. He was given an opportunity to make good on it. He not only didn't make good on it, he announced that he wasn't going to make good on it, and so therefore it was referred to law enforcement over to the district attorney's office for prosecution, and he was charged. And he paid restitution in order to get the charges dismissed. Pure and simple. This is a standard bad check case. There's nothing unique about this case that doesn't occur every day, probably in every other jurisdiction, about how bad check cases are prosecuted. I don't think that's right. At least in my jurisdiction, you don't go to jail, you don't get threatened with jail unless you pay. Once it gets to the stage of jail, you go to jail whether you pay or not. You pass the bad check, you go to jail. All I can say, Your Honor, is that in Nevada, if you agree to pay the restitution, you are typically the charges would be dismissed against you. But that's the mechanism that the district attorney's office handles. It's up to the DA, though, as to whether that's the policy they wish to pursue. Absolutely. We have no control over that. I'm sure that they do put some people in jail. Ah, but the problem is that you do. You say, I'm going to get you put in jail unless you pay me. Yes. That's what we say. And we don't say we're going to get you put in jail. We say that we're going to refer you over to the district attorney's office for prosecution of the crime that you committed unless you make good on what you owe us. That's what every merchant does, Your Honor. Every merchant does that. Casinos aren't unique in that regard. If you pass a bad check, if you had insufficient funds, if someone comes and steals something from you. It's not a custom everywhere. The custom in many places is the merchant says, you checked it in clear, would you come down and take care of it? And if they don't get a response, they send it to the DA, but they never threaten the person with the DA. Well, I can't tell you that. All I can tell you is you go to any business in the state of Nevada, and there's going to be a big sign there with a picture of the district attorney on it telling you that if you pass a check for insufficient funds, you will be referred, you will be prosecuted to the maximum extent of the law. That threat is made every time you write a check. Let me ask an admittedly hypothetical question just simply addressed in Nevada law. All right. And here's the hypothetical situation. There's a bookkeeper at a small business who embezzles a sum of money. The employer discovers it, calls the person in, and says, if you repay what you took, fine. If you don't repay it, I'm going to refer this to the district attorney for prosecution. Would that be actionable under Nevada law? No. It would not, any more than anyone steals your car and you say, bring it back or I'm going to call the cops. If they bring it back, you don't call the cops. If they don't, you call the police. That doesn't mean, well, now you're guilty of extortion because you confronted a thief about returning property that didn't belong to them. You've answered my question. Thank you. Thank you, counsel. Carlins v. Hotel Ramada is submitted. Amazon Natural Treasures v. Forty Pines Security has been removed from the calendar. Citiati v. Gonzales is submitted. Oh, three papers to me. Citiati v. Gonzales will be next. We're missing a lawyer on Citiati. Let's roll it to the bottom of the calendar and we'll take it up last. Just wait and we'll take up Citiati after we hear the other cases. There's only one more. Next, Luntungen v. Gonzales is submitted. Alvarez and Granados, I know one of them is submitted. I think we're hearing, are we hearing argument in the other? One of them is deferred. We deferred it. United States v. Marquez is submitted. We'll hear Barton v. U.S. District Court. Do you want the clerk to divide up your time so that multiple lawyers on the same side argue? Same for respondents? Thank you. May it please the Court. Good morning. My name is Robert Brava-Partain. I'm here today with Karen Barth-Menzies and we represent the petitioners. With the Court's permission, I would like to reserve five minutes for rebuttal. The issue presented by this petition is whether a generic disclaimer is enough to violate the expectation of confidentiality and attorney-client privilege petitioners had under California law. Counsel, let me focus your attention on what's bothering me most in the case.
judges: Kleinfeld, Hawkins, Graber